The Honorable Paula L. McCandlis

```
_____ FILED      _____ ENTERED
_____ LODGED     _____ RECEIVED

        DEC 11 2025

           AT SEATTLE
    CLERK U.S. DISTRICT COURT
  WESTERN DISTRICT OF WASHINGTON
BY                          DEPUTY
```

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ALIM HAFFIZ JALLO-JAMBORIA,<br><br>Defendant. | CASE NO. MJ25-5447<br><br>COMPLAINT for VIOLATION<br><br>Title 18, U.S.C., Section 2261A(1)(A) |

BEFORE, Paula L. McCandlis, United States Magistrate Judge, U. S. Courthouse, Seattle, Washington.

The undersigned complainant being duly sworn states:

### **COUNT ONE**

### **(Stalking)**

On or about December 8, 2025 at Joint Base Lewis McChord, within the Western District of Washington, and elsewhere, ALIM HAFFIZ JALLO-JAMBORIA was present within the special maritime and territorial jurisdiction of the United States with the intent

Complaint - 1
*United States v. Jallo-Jamboria*
USAO No. 2025R01411

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
253- 428-3800

to kill, injure, harass, and intimidate Victim 1 and Victim 2, and placed under surveillance with intent to kill, injure, harass, and intimidate Victim 1 and Victim 2, and in the course of such presence and surveillance placed Victim 1 and Victim 2 in reasonable fear of the death and serious bodily injury to Victim 1 and Victim 2.

All in violation of Title 18, United States Code, Section 2261A(1)(A) and 7(3).

And the complainant states that this Complaint is based on the following information:

I, John T. Ruffner, a Special Agent with the Department of the Army Criminal Investigation Division (DACID) at Joint Base Lewis-McChord (JBLM), being first duly sworn on oath, depose and say:

1. I have been a Special Agent with the Department of the Army Criminal Investigation Division (DACID) since February 2025. DACID is recognized as a Federal Law Enforcement Agency under Title 28, Code of Federal Regulations, Section 60.3(a)(2).

2. As an accredited Special Agent, I am currently responsible for the investigation of felony level criminal acts where there is a U.S. Army interest, and, as such, have conducted numerous criminal investigations. I have executed or participated in the execution of search authorizations and seized evidence pertaining to these violations.

3. I have received special training and accreditation through multiple courses, including the Federal Law Enforcement Training Center's Criminal Investigator Training Program and the DACID Special Agent Basic Training. Based on this training and experience, I am familiar with the behavior of criminal offenders, indicators of criminal behavior, and forensic science techniques.

4. The facts set forth in this Complaint are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this

Complaint - 2
United States v. Jallo-Jamboria
USAO No. 2025R01411

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
253-428-3800

1  investigation, including other law enforcement officers; interviews of witnesses; my
2  review of records related to this investigation; communications with others who have
3  knowledge of the events and circumstances described herein; and information gained
4  through my training and experience.

5      5.      Because this Complaint is submitted for the limited purpose of establishing
6  probable cause, it does not set forth each and every fact that I or others have learned
7  during this investigation. I have set forth only those facts that I believe are relevant to the
8  determination of probable cause to believe that ALIM HAFFIZ JALLO-JAMBORIA
9  committed the crime of stalking, in violation of Title 18, United States Code, Sections
10 2261A(1)(A).

11     6.      At about 10:30am on December 10, 2025, Victim 1 and Victim 2 reported
12 the following to DACID.

13     7.      At around 11:00pm on December 8, 2025, Victim 1 and Victim 2 were in
14 Victim 2's barracks room on JBLM when ALIM HAFFIZ JALLO-JAMBORIA sent
15 electronic messages to Victim 1's phone. The content of these messages included pictures
16 and videos of ALIM HAFFIZ JALLO-JAMBORIA in near physical proximity to and in
17 contact with Victim 1's vehicle, along with messages which indicated that JALLO-
18 JAMBORIA knew the location of Victim 1 in Victim 2's barracks building. Victim 1 had
19 not disclosed Victim 1's intended location that night to JALLO-JAMBORIA. Victim 1
20 interpreted these messages as a form of intimidation to prevent Victim 1 from socializing
21 with Victim 2.

22     8.      The content of these messages made Victim 1 concerned about the safety of
23 Victim 1's vehicle, which was parked near Victim 2's barracks. Victim 2 exited the
24 barracks building to visually examine the vehicle. When Victim 2 approached the
25 vehicle, Victim 2 noticed JALLO-JAMBORIA approximately 45 feet away from Victim
26 2's location. JALLO-JAMBORIA had a firearm pointed in the direction of Victim 2.
27

Complaint - 3
United States v. Jallo-Jamboria
USAO No. 2025R01411

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
253- 428-3800

JALLO-JAMBORIA approached Victim 2 and demanded that Victim 2 lead JALLO-JAMBORIA to Victim 1's exact location within the barracks building.

9. Victim 2 began to walk back into the barracks building, at which point JALLO-JAMBORIA placed the firearm in his waistband with the grip area of the firearm still plainly visible. JALLO-JAMBORIA followed Victim 2 back into the barracks building. To escape physical harm from JALLO-JAMBORIA, Victim 2 eluded JALLO-JAMBORIA by rapidly progressing through a double door which put Victim 2 out of JALLO-JAMBORIA's sight.

10. After Victim 2 eluded JALLO-JAMBORIA, JALLO-JAMBORIA continued to send messages to Victim 1 which indicated JALLO-JAMBORIA knew Victim 1's location and wanted Victim 1 to exit the barracks building to prevent Victim 1 from socializing with Victim 2.

11. The next day, December 9, 2025, Victim 1 located an electronic device labelled as "Spytec GL300" in the spare tire well of Victim 1's vehicle. Victim 1 did not place, nor did Victim 1 consent to the placement of, this device in Victim 1's vehicle. Victim 1 believed that JALLO-JAMBORIA used this device to track Victim 1's location. Victim 1 and Victim 2 disposed of the device in a storm drain in vicinity of Railroad Avenue and South Twentieth Street on JBLM.

12. Around 8:30am on December 10, 2025, Victim 1 and Victim 2 were seated in Victim 1's vehicle outside the barracks building at 41316 Railroad Avenue, JBLM. After approximately five minutes of Victim 1 and Victim 2 sitting in Victim 1's vehicle, JALLO-JAMBORIA drove into the parking lot and positioned his vehicle near Victim 1's vehicle. Victim 1 and Victim 2 believed this was an attempt by JALLO-JAMBORIA to block Victim 1 and Victim 2's vehicular egress from their parking space. JALLO-JAMBORIA exited his vehicle, displayed a firearm in his waistband, and kicked Victim 1's vehicle. Victim 2 was fearful for Victim 1 and Victim 2's life and instructed Victim 1 to drive away from the area. Victim 1 was able to maneuver Victim 1's vehicle out of its

Complaint - 4
*United States v. Jallo-Jamboria*
USAO No. 2025R01411

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
253-428-3800

1  parking spot and Victim 1 drove away from the area. JALLO-JAMBORIA used his
2  vehicle to follow Victim 1's vehicle.

3      13.   Victim 1 and Victim 2 were concerned about their safety as JALLO-
4  JAMBORIA continued to follow them. Victim 1 and Victim 2 called emergency dispatch
5  via "911," who instructed Victim 1 and Victim 2 to drive towards the JBLM Military
6  Police Station. When they were about 250 feet from the Military Police Station, the front
7  of JALLO-JAMBORIA's vehicle hit the rear of the vehicle occupied by Victim 1 and
8  Victim 2. This resulted in the vehicle occupied by Victim 1 and Victim 2 spinning 180
9  degrees. Victim 1 believed this was an attempt by JALLO-JAMBORIA to prevent Victim
10 1 from reaching the Military Police Station. After the collision, JALLO-JAMBORIA
11 drove away from the collision site and continued to drive east along Pendleton Avenue on
12 JBLM. The collision of JALLO-JAMBORIA's vehicle and the vehicle occupied by
13 Victim 1 and Victim 2 made Victim 2 fearful for Victim 2's physical well-being.

14     14.   JBLM Military Police Officers then contacted JALLO-JAMBORIA's
15 vehicle as it travelled east on Pendelton Avenue, JBLM. JBLM Military Police Officers
16 initiated a traffic stop of JALLO-JAMBORIA's vehicle and apprehended JALLO-
17 JAMBORIA. Due to concern about the location of the firearm and the possibility other
18 individuals may be able to access it, Military Police Officers questioned JALLO-
19 JAMBORIA about the location of his firearm. JALLO-JAMBORIA stated the firearm
20 was inside the vehicle. Military Police Officers located a loaded black pistol-style firearm
21 in the vehicle and collected it as evidence. JALLO-JAMBORIA declined to make
22 additional statements to Military Police Officers during this encounter. Military Police
23 Officers took pictures of damage to the front of JALLO-JAMBORIA's vehicle and the
24 rear of Victim 1's vehicle.

25     15.   Later that morning, DACID agents recovered the device labelled "Spytec
26 GL300" from a storm drain in vicinity of Railroad Avenue and South Twentieth Street on
27 JBLM, where Victim 2 indicated Victim 2 disposed of the device.

Complaint - 5
United States v. Jallo-Jamboria
USAO No. 2025R01411

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
253- 428-3800

16. Open-source research indicated that the device is a mini–Global Positioning System (GPS) tracker with tracking data accessed by a supporting "app" that keeps individuals updated in real time as to the tracker's location for up to 14 days before the device's battery must be recharged. The device's tracking "app" is available on both iOS and Android Operating System-based smartphones.

17. Based on my professional experience, open-source research on the device labelled as "Spytec GL300," and the fact that Victim 1 did not disclose Victim 1's location to JALLO-JAMBORIA on the night of December 8, 2025, it is likely that JALLO-JAMBORIA used the "Spytec GL-300" discovered on Victim 1's vehicle to place Victim 1's vehicle under surveillance and track Victim 1's location.

18. Based on the above facts, I respectfully submit that there is probable cause to believe that ALIM HAFFIZ JALLO-JAMBORIA did knowingly and intentionally commit the offense of stalking, in violation of Title 18, United States Code, Section 2261A(1)(A).

SA John T. Ruffner, Complainant
Special Agent, Department of The Army
Criminal Investigation Division

Based on the Complaint and Affidavit sworn to before me, and subscribed in my presence, the Court hereby finds that there is probable cause to believe the Defendant committed the offense set forth in the Complaint.

Dated this 11th day of December, 2025.

The Honorable Paula L. McCandlis
United States Magistrate Judge

Complaint - 6
United States v. Jallo-Jamboria
USAO No. 2025R01411

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
253- 428-3800