THE HONORABLE TIFFANY M. CARTWRIGHT

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

UNITED STATES OF AMERICA,           )   No. CR25-5354-TMC
                                    )
            Plaintiff,              )
                                    )
        v.                          )
                                    )
ALIM HAFFIZ JALLO-JAMBORIA,         )
                                    )
            Defendant.              )
                                    )

# EXHIBIT A

TO MOTION TO REVOKE DETENTION ORDER

(DKT. 15]

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

# USA v. Jallo-Jamboria

# Hearing (December 16, 2025)



1325 Fourth Avenue, Suite 1840 Seattle, Washington 98101
6 South Second Street, Suite 718 Yakima, Washington 98901
Bellingham | Everett | Tacoma | Olympia | Yakima | Spokane
Seattle 206.287.9066 | Tacoma 253.235.0111 | Eastern Washington 509.624.3261
www.buellrealtime.com
email: audio@buellrealtime.com

```
 1              UNITED STATES DISTRICT COURT FOR THE

 2                 WESTERN DISTRICT OF WASHINGTON

 3                          AT TACOMA

 4    _____

 5    UNITED STATES OF AMERICA,        )

 6                     Plaintiff,      ) Case No. 3:25-mj-05447-PLM

 7    v.                               )

 8    ALIM HAFFIZ JALLO-JAMBORIA,      )

 9                     Defendant.      )

10    _____

11                      DETENTION HEARING

12          The Honorable Grady J. Leupold Presiding

13                     December 16, 2025

14    _____

15

16

17

18

19

20

21

22

23

24    Transcribed by:  Buell | RJW
                       Court-Certified Transcription
25                     206.287.9066
```

```
1                      A P P E A R A N C E S

2

3    On Behalf of Plaintiff:

4    MARCI L. ELLSWORTH

5    United States Attorney's Office

6    1201 Pacific Avenue

7    Suite 700

8    Tacoma, Washington  98402-4305

9

10   On Behalf of Defendant:

11   REBECCA C. FISH

12   Federal Public Defender

13   1331 Broadway

14   Suite 400

15   Tacoma, Washington  98402-3410

16

17

18   Also Present:

19   TIANA KEOMALU, Pretrial Services

20

21

22

23

24

25
```

1              I N D E X   O F   P R O C E E D I N G S

2

3                                                          PAGE

4    December 16, 2025 Hearing Proceedings.....................    4

5    Introductions and Preliminary Matters....................    4

6    Argument by Ms. Ellsworth Re Basis for Detention Hearing..    6

7    Argument by Ms. Fish Re Lack of Basis for Hearing.........    8

8    Ruling...................................................   10

9    Preliminary Remarks......................................   11

10   Statement from Victim 2..................................   15

11   Statement from Victim 1..................................   19

12   Argument by Ms. Ellsworth................................   20

13   Questions from the Court.................................   22

14   Argument by Ms. Fish.....................................   24

15   Statement of Defendant...................................   30

16   Ruling...................................................   30

17   Conclusion of Proceedings of December 16, 2525...........   44

18

19

20

21

22

23

24

25

```
 1                          -o0o-

 2                    December 16, 2025

 3

 4        THE COURTROOM DEPUTY:  Calling the matter of United

 5   States of America v. Alim Haffiz Jallo-Jamboria, Case

 6   No. mj25-5447.

 7        Parties, if you could please identify yourself for

 8   the record?

 9        MS. ELLSWORTH:  Good afternoon, Your Honor.  Marci

10   Ellsworth for the United States.

11        THE COURT:  Good afternoon, Ms. Ellsworth.

12        MS. FISH:  Good afternoon, Your Honor.  Rebecca

13   Fish, on behalf of Mr. Jallo-Jamboria, who is seated to

14   my left.

15        THE COURT:  All right.  Good afternoon, Ms. Fish.

16        And good afternoon, Mr. Jallo-Jamboria.

17        MR. JALLO-JAMBORIA:  Good afternoon, Your Honor.

18        THE COURT:  Good afternoon.

19        OFFICER KEOMALU:  Good afternoon, Your Honor.

20   Tiana Keomalu from Pretrial Services.

21        THE COURT:  Good afternoon, Officer Keomalu.

22        All right.

23        All right, sir, as I understand it, you have -- you

24   are in custody pursuant to a criminal complaint that has

25   been sworn out, charging you with a federal offense.  So
```

1  the purpose of today's hearing is to conduct what's

2  called an initial appearance.  So we're going to advise

3  you of the nature of that charge, the potential penalties

4  associated with that charge --

5       Ms. Fish?

6       MS. FISH:  Your Honor, I was just going to say he

7  had his initial appearance in Seattle last week when all

8  new arrests were brought there, so I think today is just

9  the detention hearing.

10      THE COURT:  Thank you.

11      So because you have already received that initial

12 appearance, sir, we're going to conduct just the

13 detention hearing.  So the purpose of today's hearing is

14 to do just that.

15      Is that your understanding as to the purpose of

16 today's hearing?

17      MR. JALLO-JAMBORIA:  Yes, Your Honor.

18      THE COURT:  All right.  Thank you.

19      And then, Ms. Fish, I did have an opportunity to

20 review the docket before I mistakenly began an initial

21 appearance.  What's your understanding as to the extent

22 to which the parties discussed the government's right to

23 a detention hearing during that initial proceeding?

24      MS. FISH:  Your Honor, I don't -- I'm not aware

25 that there was any discussion at that initial appearance,

1    so I am prepared to argue about that today, Your Honor.

2        THE COURT:  All right.  Anything else you can --

3    any other information about that, that you haven't

4    provided to the Court, Ms. Ellsworth?

5        MS. ELLSWORTH:  Your Honor, I don't know the extent

6    to which the eligibility was discussed at the previous

7    appearance.

8        THE COURT:  Okay.  All right.

9        So, Ms. Ellsworth, you have filed your Motion for

10   Detention.  Upon what basis do you believe the government

11   is entitled to a detention hearing in this matter?

12       MS. ELLSWORTH:  Subsection (f)(2)B of 3142, Your

13   Honor:  A serious risk that the Defendant will obstruct

14   or attempt to obstruct justice, or threaten, injure, or

15   intimidate, or attempt to do so, a prospective witness.

16       THE COURT:  Okay.  And you may be heard.

17       MS. ELLSWORTH:  Thank you, Your Honor.  With

18   relation to the argument that this is eligible for a

19   detention hearing, the nature of the alleged offense

20   itself and the facts set forth in the complaint

21   illustrate the serious risk that this particular

22   Defendant poses.  There is a risk to two victims,

23   Victim 1 and Victim 2.

24       As set forth in the complaint, Mr. Jallo-Jamboria,

25   without any apparent provocation that's known to the

1  government at this point, threatened and intimidated two

2  people.  They were -- those threats and that intimidation

3  were, according to the complaint, written in text

4  messages.  They were effectuated through the placement of

5  a tracking device in the spare tire well of Victim 1's

6  vehicle; and the threats and the intimidation, the threat

7  to injure occurred when Mr. Jallo-Jamboria twice

8  brandished or displayed a firearm that, as set forth in

9  the complaint at least for that second occasion, was

10  found to be a loaded firearm.

11       So these are not hypothetical risks.  We're not

12  talking about something that could happen or might

13  happen.  We're talking about something that a magistrate

14  judge found probable cause to believe did happen.  These

15  are serious concrete acts that Mr. Jallo-Jamboria

16  undertook.

17       He knows where both victims live.  He has shown

18  some degree of technological savvy by obtaining the

19  planning devi- -- the tracking device, which takes some

20  advance planning, getting it, placing it in one of the

21  victim's vehicles, having the corresponding software on

22  his phone, and then being able to use that tracking

23  device to follow Victim 1 to JBLM.

24       He's also shown a willingness to disregard the

25  rules of entry for JBLM.  It's my understanding that you

1   can bring a firearm onto the installation if it is

2   registered.  CID has found no information that the

3   firearm Mr. Jallo-Jamboria had was registered.  So just

4   by bringing that onto the installation, again, that just

5   shows the serious risk that this Defendant poses given

6   his willingness to disregard rules.

7        So I won't continue on with my argument for

8   detention, but I believe that the facts of this case,

9   this specific case, show that Mr. Jallo-Jamboria does

10  present a serious risk as required by the statute.

11       THE COURT:  All right.  Thank you, Ms. Ellsworth.

12       All right, Ms. Fish, you may be heard on just the

13  threshold issue of whether or not the government is

14  entitled to a detention hearing.

15       MS. FISH:  Thank you, Your Honor.

16       I do not believe that the government has met their

17  burden here.  As the Court is well aware, it is

18  specifically a risk of obstruction, not a generalized

19  risk of danger.  Certainly, I was just assigned this case

20  last Thursday and investigation is very early, so I

21  understand the Court can and will consider the

22  allegations made in the complaint, but I do not

23  necessarily personally agree that those are proven.

24       And I would note that the -- what the prior

25  magistrate judge found was actually that the allegations

1   detailed in the complaint established probable cause for

2   the offense, not that they had occurred.  So I just

3   wanted to be clear about that finding.

4        Here, the government argues that essentially the

5   charge itself is proof of it establishing its threshold,

6   a right to a detention hearing based on the serious risk

7   of obstruction, but Congress chose not to enumerate this

8   offense as one that could trigger a detention hearing.

9   So I think that argument kind of fails on a facial level

10  in terms of the offense itself being a basis to believe

11  someone would obstruct justice.

12       Here, I don't believe that there is sufficient

13  evidence that Mr. Jallo presents any risk of obstruction,

14  let alone a serious risk which is heightened above the

15  ordinary risk of flight that the government might show in

16  other cases.

17       I received, I believe yesterday, from the

18  prosecutor a short note written by the alleged Victim 1

19  that stated she was not in fear for her safety.  So if

20  the person that the government is seeking to protect from

21  obstruction indicates they're not concerned about that, I

22  don't think that helps the government's case that this is

23  a case where they are entitled to a detention hearing.

24       I, you know, also have looked at Mr. Jallo's record

25  including in the Pretrial Services report.  He has no

1    prior criminal history whatsoever.  He's not been in

2    trouble.  He's been able to follow very strict rules

3    during his several years serving in the United States

4    Army.  This has included him following those rules and

5    keeping up with them, as well as now currently keeping up

6    with his demanding course work in college, despite him

7    dealing with some significant personal struggles,

8    including the very tragic and sudden passing of his

9    father in 2021.

10         I just don't believe here that there's any

11   indication that he has any intent, desire, or inclination

12   to interfere with the judicial process, let alone with

13   any of the potential witnesses that the government may

14   call in this case.  Indeed, it appears one of those

15   witnesses has indicated they are not worried about that.

16         So I don't think that the government has made the

17   threshold showing.  I think the fact that Congress

18   omitted this from the list of enumerated offenses also

19   supports that, you know, this type of allegation alone is

20   not sufficient to make that threshold showing.  And I

21   would ask the Court to simply hold a hearing regarding

22   conditions of release.

23         THE COURT:  All right.  Thank you, Ms. Fish.

24         All right.  Ms. Fish, your arguments are

25   well-taken.  I do rely, though, upon the criminal

 1   complaint that has been filed, even though I don't

 2   believe that is required as predicate evidence for this

 3   finding.  It is a sworn affidavit.  I do take the

 4   Defense's point, though, that the probable cause finding

 5   was as to the elements of the offense and not to the

 6   facts, but the facts remain contained within a sworn

 7   affidavit.

 8        I also am able to rely upon the proffered

 9   information of the government, although Ms. Ellsworth did

10   rely primarily upon the criminal complaint.  And after my

11   review of the information contained in the complaint, I

12   do agree with Ms. Ellsworth's argument.  The government

13   is entitled to a detention hearing under 18 United States

14   Code, Section 3142(f)(2)(B).

15        All right.  Now we will proceed directly to a

16   detention hearing.  I had the opportunity to review the

17   criminal complaint, the first Pretrial Services report,

18   as well as the supplemental pretrial report.

19        I also received and had an opportunity to review an

20   emailed statement via Ms. Tracy Orcutt of the U.S.

21   Attorney's Office, which appears to come to us by

22   Victim 1.

23        First, Ms. Fish, did you receive and have an

24   opportunity to review each of those documents?

25        MS. FISH:  Yes, Your Honor.

```
 1        THE COURT:  And do you object to the Court

 2   considering any of the information in any of those

 3   documents solely for the purposes of detention?

 4        MS. FISH:  No, Your Honor.

 5        THE COURT:  All right.  And then, Ms. Fish, what

 6   additional information would you like to proffer or

 7   evidence can you offer at this time in support of your

 8   argument for release, presuming you're seeking your

 9   client's release today?

10        MS. FISH:  I am, Your Honor.

11        Most of the information we would proffer is

12   contained in that supplemental Pretrial Services report.

13   I would also proffer that Mr. Jallo's uncle,

14   Mr. Keramidas, is present in court, supporting him today

15   and is prepared to take him home today.

16        I've also had the opportunity before court to

17   review the proposed conditions with Mr. Jallo and he

18   understands and is prepared to accept those conditions.

19        Kind of the -- I'm happy to answer any more

20   detailed questions, but the general information is

21   contained in the Pretrial Services report.

22        THE COURT:  All right.  Thank you, Ms. Fish.

23        Ms. Ellsworth, do you object to the Court

24   considering any of the information contained in any of

25   the documents that I previously identified?
```

1    MS. ELLSWORTH:  No.  I would note, however, that in

2    the Pretrial Services report, Mr. Jallo-Jamboria was not

3    arrested on a warrant in this case.  It was a probable

4    cause arrest, so that clarification to the Pretrial

5    Services report.

6        I did also last week email Ms. Fish and Pretrial

7    Services Officer Sahore, who I don't know if she

8    forwarded it to Officer Keomalu or not, one of the

9    reports written by CID to add the additional fact to

10   paragraph 14 of the complaint that not only was the

11   firearm loaded, that there was a round chambered in it

12   and there were additional rounds of ammunition found in

13   the trunk of the vehicle.

14       THE COURT:  And then, Ms. Ellsworth, any additional

15   information to proffer at this time?

16       MS. ELLSWORTH:  To proffer?  No, Your Honor.  But I

17   would also note that Victim 2, I believe, is on the

18   phone.

19       THE COURT:  Okay.  And so we'll segue into this at

20   this time.  So pursuant to the Victims' Rights Act,

21   did -- has the government had an opportunity to notify

22   both Victim 1 and Victim 2 of this hearing and have they

23   been provided an opportunity to participate?

24       MS. ELLSWORTH:  Yes.  Victim 1 is present in the

25   courtroom.  Victim 2 is on the court's Zoom bridge line.

1        THE COURT:  All right.  And do you know when the

2   time is appropriate whether or not one or both alleged

3   victims would like to address the Court?

4        MS. ELLSWORTH:  I believe they both do, Your Honor.

5        THE COURT:  Okay.  Thank you.

6        Ms. -- Officer Keomalu, do you have any additional

7   information to offer at this time?

8        OFFICER KEOMALU:  I do not, Your Honor.

9        THE COURT:  Okay.  All right, Ms. Fish, do you

10   object to the Court considering the additional

11   information proffered by Ms. Ellsworth?

12        MS. FISH:  No, Your Honor.  I did receive the

13   report she referenced.  It is a summary of one officer

14   essentially summarizing other officers' statements, so to

15   the extent that impacts the Court's -- the weight the

16   Court gives that information.

17        THE COURT:  Okay.  Thank you.

18        All right.  So at this time, Ms. Ellsworth, which

19   victim would like to address the Court first, if you

20   know?

21        MS. ELLSWORTH:  Your Honor, Ms. Orcutt indicates

22   that perhaps having Victim 2 proceed first would be best.

23   She is also indicating that apparently he's having

24   trouble hearing over the court's line, so I don't know if

25   that's because we need to speak more directly into the

 1  microphones or if there's a problem with the connection,

 2  but let's try to hear from him first.

 3          THE COURT:  All right.  Let's give this a try.

 4          Victim No. 2, this is the United States Magistrate

 5  Judge Grady Leupold.  Can you hear me?

 6          VICTIM 2:  Yes, I can hear you.

 7          THE COURT:  All right.  Are you prepared to address

 8  the Court?

 9          VICTIM 2:  (Inaudible) to say because I couldn't

10  hear really nothing.  Everything was all static.

11          THE COURT:  Well, we can hear you, so let us know

12  what you have to say.

13          VICTIM 2:  Well, the first day I encountered him, I

14  guess from what I was seeing, he was sending her

15  messages, like kicking her car, taking air out of her

16  tires.  So me, like as a man, I'm not going to let no

17  person, you know, do that to a female's car.

18          So I went to go step outside.  And no one was

19  outside when I stepped outside that I could see because

20  it was already late at night.  I'm the only person

21  outside.  And when I turned around, I'm like looking

22  down.  And I look up and there's like something pointed

23  at my direction.  It looked like a firearm to me but,

24  like, I don't know if he -- he put it back in like in his

25  pocket -- because he was wearing a hoodie.

1        But I don't know if he wanted to misidentify me or

2    something.  So that's when he said, "Oh, are you

3    so-and-so?"  And I lied.  You know, I'm not going to give

4    up my name.  And, like, we kept walking, because he was

5    following me.  And I was able to lose him and that's when

6    I went up back to the room and called the MPs.

7        The second altercation with him, I was just going

8    to get a ride to work.  And he pulled up behind us --

9    with the female driving -- and starts kicking the window

10   and starts showing his firearm.  So yeah, I told her to

11   drive.

12       We ex- -- we somehow made it out from being blocked

13   in and he's chasing us.  And we're going fast because

14   he's chasing us, like trying to sideswipe us.  And we're

15   going, I'm saying, more than 80 miles per hour.

16       And I'm telling the girl, "Go to the MPs."  Like,

17   he -- I feel like he's not going to follow us if we go

18   there.  Yeah, but like he hit us from the back.  And,

19   like, my back is kind like fucked up.  It's been hurting

20   at work.  And I'm like -- and I pick up a lot of stuff

21   for work.  So it's like I can't even work as -- like how

22   I used to be.

23       Like, that's pretty much like he hit us, pointed a

24   gun at me.  I don't know what else there is to say.

25   Like, I feel like -- like being on JBLM, you would think

 1 | it's being -- like, you'll be safe because it's, you
 2 | know, a military base, but knowing that there's people
 3 | like him, like a veteran, being able to come on base and
 4 | just bring a firearm and like -- you know?  That's pretty
 5 | much it.
 6 |        THE COURT:  Is that it, sir?
 7 |        VICTIM 2:  Yeah.
 8 |        THE COURT:  All right.  Thank you.
 9 |        All right.  Before we proceed to Victim 1,
10 | Ms. Ellsworth, there was a fair amount of factual detail
11 | proffered by Victim 2.  Is the government rely -- seeking
12 | to rely upon that proffered information in support of its
13 | argument for detention?
14 |        MS. ELLSWORTH:  Your Honor, I think that proffered
15 | information that Victim 2 just provided the Court is not
16 | inconsistent with what's in the complaint.  What it does,
17 | I think, highlight for the Court is Victim 2's concern
18 | with Mr. Jallo-Jamboria and the concern that Victim 2 has
19 | for his safety.
20 |        THE COURT:  Okay.  Thank you, Ms. Ellsworth.
21 |        Ms. Fish, in addition to giving Victim 2 an
22 | opportunity to be heard, which the Court did, do you
23 | object to the Court otherwise considering any of the
24 | information contained in that statement in support of the
25 | government's detention order?

 1      MS. FISH:  Your Honor, I do not believe it supports

 2  the government's detention motion in that it's -- I

 3  disagree that -- I do think some of the statements were

 4  inconsistent with the -- what -- albeit secondhand,

 5  allegations made in the complaint including the

 6  allegation of brandishing on the first occasion, which

 7  Victim 2 today seemed to back away from and did not

 8  allege that that was for sure what had happened.

 9      So, you know, I think the Court can take it all

10  into consideration in the weight it gives any of the

11  allegations made by the government with regard to

12  Mr. Jallo today.  And I certainly recognize that he does

13  have a right to address the Court as part of the Victim

14  Rights Act, so I don't dispute that, but I don't agree

15  that it supports the government's motion for detention.

16  I think somewhat to the counter.

17      THE COURT:  Certainly, but you don't otherwise

18  contest -- or you don't object to the Court considering

19  the factual information contained in the statement?

20      MS. FISH:  I guess I don't object to the Court

21  considering the statement.  I think the statement creates

22  some disputes of fact within -- between the complaint and

23  the statement, Your Honor.

24      THE COURT:  And by virtue of that, the Defense can

25  also rely upon that --

1          MS. FISH:  Yes, Your Honor.

2          THE COURT:  -- as well.

3          All right, Ms. Ellsworth, is Victim 1 prepared to

4     address the Court?

5          MS. ELLSWORTH:  Yes, Your Honor.

6          VICTIM 1:  Hi, Your Honor.  My name is [Victim 1].

7     I just want to let you know, I don't fear for my safety.

8          Ellsworth also mentioned there was ammo in the

9     trunk of Jallo's car.  I already told CID that was my

10    ammo, so I don't believe they should even bring that up

11    to you.  I don't know why they did.

12         I just also wanted to let you know, Tracy also

13    mentioned something about a no contact.  I have no clue

14    about that.  That also got -- never got brought up today.

15    I don't believe that should be a thing as well if they

16    try to pursue that as well.

17         THE COURT:  Okay.  Is that it, ma'am?

18         VICTIM 1:  Yes.

19         THE COURT:  Okay.  Thank you.

20         VICTIM 1:  Thank you.

21         THE COURT:  All right.  So, Ms. -- anything else?

22    Any other victim statements, Ms. Ellsworth?

23         MS. ELLSWORTH:  No.  Those are the only two

24    victims, Your Honor.

25         THE COURT:  All right.  I believe the government

 1  has the burden, so you may be heard, Ms. Ellsworth.

 2      MS. ELLSWORTH:  Thank you, Your Honor.

 3      There are two victims for the Court to consider in

 4  this matter.  Both Victim 1 and Victim 2, as Your Honor

 5  acknowledges, have the right to be heard.  And just

 6  because their perceptions at this point diverge, does not

 7  mean that the Court should not consider both of them

 8  somewhat equally.

 9      Victim 1 has had a longer-term relationship with

10  Mr. Jallo-Jamboria and, perhaps, sees things differently

11  than Victim 2, who, as he told the Court, the first time

12  he'd ever seen Mr. Jallo-Jamboria was that night on JBLM

13  when Mr. Jallo-Jamboria was purportedly kicking Victim

14  1's car.

15      So again, we have something completely out of the

16  blue, unprovoked, that causes Mr. Jallo-Jamboria to not

17  only track Victim 1 but track her to the installation,

18  begin to effect property damage, and then things began to

19  spiral out of control from that first incident through to

20  the second incident where he again has made his way onto

21  JBLM back to the area where Victim 1 and Victim 2 are and

22  then proceeds to engage in this sort of high-speed chase

23  down the streets of JBLM.

24      So it's serious conduct.  It's dangerous to the

25  entire JBLM community to have someone with a firearm

1    that's not registered with the military police or the

2    other authorities and to have that loaded firearm on the

3    installation with a round chambered in it, and then also

4    to be driving at a high rate of speed on the

5    installation.

6           There are certainly proposed conditions included in

7    the Pretrial Services report.  And I don't disagree with

8    the conditions per se.  I do think there are some mental

9    health issues at play.  It's a little distressing that

10   counsel asked that questions about Mr. Jallo-Jamboria's

11   mental health not be asked because that leaves the Court

12   with an absence of information, although the condition

13   proposed would require him to obtain an evaluation and

14   follow any treatment requirements.

15          Probation is also recommending GPS monitoring.  I

16   would suggest that if the Court were to impose some sort

17   of location monitoring condition that it actually place

18   Mr. Jallo-Jamboria on the highest degree of monitoring,

19   essentially home detention, because then he would only be

20   allowed to travel to places that are known and already

21   approved by Pretrial Services.

22          And so to the extent there is any ability to

23   control where he's going and what he's doing while he's

24   under the supervision of the Court, that would seem the

25   better way to do it because otherwise if

QUESTIONS FROM THE COURT

1    Mr. Jallo-Jamboria decides to act again out of the blue

2    apropos of nothing, as far as we know, it could be too

3    late by the time Pretrial Services catches up to him.

4          And that's really the underlying concern here and

5    what is supporting the government's recommendation for

6    detention is that, again, whatever is going on here with

7    Mr. Jallo-Jamboria, it's unknown.  It's unknown to what

8    degree mental health is playing into this.  It's unknown

9    to why this happened, other than it did, and that's

10   frightening.

11         And the thought that -- again, that someone is

12   tracking you, following you, and then allegedly accosting

13   and brandishing a loaded firearm at someone, does pose a

14   serious risk of danger to the community and is a serious

15   concern for this Court that -- again, there might be

16   conditions, but by the time the Court or Pretrial

17   Services is alerted to Mr. Jallo-Jamboria acting again,

18   it might be too late to stop him.

19         THE COURT:  I have a couple of followup questions,

20   Ms. Ellsworth.

21         So, first, is the government arguing that the

22   Defendant is a flight risk or only a danger to the

23   community?

24         MS. ELLSWORTH:  I don't have any reason to think

25   that he's a flight risk.  As Ms. Fish points out, he has

QUESTIONS FROM THE COURT

1    no criminal history.  He's lived in Washington for quite

2    a number of years.  He does have the family member in the

3    community.  He, apparently, has been going to school in

4    the community.  He's certainly lived in the community for

5    some period of time.  So I don't have any reason to think

6    that he would not appear for future court appearances.

7         THE COURT:  And then if you could give the Court a

8    better idea about the nature and seriousness of the

9    offense?  Can the government proffer a guideline's

10   calculation for the Court?

11        MS. ELLSWORTH:  I don't know what the guideline

12   calculation would be, Your Honor, but I can tell you that

13   it would be punishable up to ten years in prison.  So it

14   is a very serious offense.  And the reason it's

15   punishable by up to ten years in prison is because of the

16   firearm.

17        The stalking by itself is not always punishable to

18   that degree, but the aggravating factor of

19   Mr. Jallo-Jamboria having that gun, displaying that gun

20   on at least one occasion, is what allows the government

21   to seek up to ten years in prison for this offense.

22        THE COURT:  So is it your contention that relative

23   to the federal offenses that are prosecuted in the

24   District Court in the Western District of Washington that

25   this Defendant is subject to lengthy confinement as a

 1   result of this or --

 2        MS. ELLSWORTH:  He -- he is.

 3        THE COURT:  -- relevant conduct, correct?

 4        MS. ELLSWORTH:  He is, Your Honor.  And again, the

 5   difference would be that if someone were simply stalking

 6   someone online, for example, the penalty would not

 7   necessarily be as severe.  It would also -- you know, an

 8   online stalker, while still frightening and certainly

 9   intimidating, is a much less visceral thing than someone

10   who has followed you to a location and is now

11   colloquially "in your face" threatening you with harm.

12        THE COURT:  All right.  Thank you, Ms. Ellsworth.

13        Officer Keomalu, anything to add to Pretrial

14   Services' recommendation?

15        OFFICER KEOMALU:  No, Your Honor.  Our

16   recommendation remains the same, Your Honor.

17        THE COURT:  Okay.  Thank you.

18        Ms. Fish, you may be heard.

19        MS. FISH:  Thank you, Your Honor.

20        Your Honor, I believe the Court can and should

21   release Mr. Jallo today.  I believe the conditions

22   recommended by Pretrial Services are appropriate.  And,

23   you know, I'll address first Ms. Ellsworth's concern

24   about Mr. Jallo not answering detailed questions about

25   his mental health.

1        He's 26 years old.  I met him by phone last week.

2    I was only able to meet him in person this week.  It took

3    a lot of courage for him to be able to open up to me

4    about what he's been dealing with.  And he only got to

5    meet Ms. Keomalu today while he was dealing with quite a

6    lot of trauma from being in jail for the first time in

7    his life over the --

8        THE COURT:  Well --

9        MS. FISH:  -- weekend.

10       THE COURT:  -- Ms. Fish, let me just address that

11   concern.  The Court won't be relying upon the observation

12   that the Defendant was instructed or may have refused to

13   provide further information to Pretrial Services.  That

14   being said, there are still some unanswered questions

15   before the Court, but the fact that the Defendant didn't

16   want to address them with Pretrial Services is not a fact

17   that I intend to rely upon.

18       MS. FISH:  Thank you, Your Honor.  But as the Court

19   can also tell from the report, he does not dispute that

20   he could use mental health support and is very happy to

21   follow that condition and to be open with a provider who

22   could be in the best position, I think, to make

23   recommendations for him and for his treatment going

24   forward.  So he is very happy to do that on bond and I

25   think that would be an appropriate condition here.

1          Overall, you know, the -- as the government
2     indicated, it's moving solely based on a claim that he
3     presents a danger to the community, but I think the
4     conditions here do more than enough to reassure the Court
5     that that will not happen.
6          As the Court heard from the young lady here in the
7     gallery today -- I won't say her name to respect her
8     privacy -- but she did not express fear for her safety.
9     She expressed that some of the evidence the government
10    relied upon actually belonged to her and not to
11    Mr. Jallo.  And I think she is, as someone who has known
12    him for several years, in a better position than probably
13    most of us in this courtroom to understand that dynamic
14    and that relationship.
15         As the Court can tell from Mr. Jallo's history from
16    the Pretrial Services report, he has no -- he's never
17    been in trouble before.  He has accomplished very hard
18    things.  He was honorably discharged from the Army after
19    serving several years.  This included him going through a
20    car accident that caused him an injury that he still
21    deals with today.
22         He lost his father very suddenly and tragically in
23    2021.  And, you know, I've spoken with him.  While I
24    think he did seek some support, he didn't really receive
25    meaningful support following that and I think he's very

 1  open to that and would like to get that support going

 2  forward.

 3       He has supportive family, who is here in court.  I

 4  also have spoken with his mother, who is very supportive

 5  and wants to do anything she can to support him.  He's

 6  got a good place to release to with his aunt and uncle.

 7  He previously was living with his girlfriend.  Obviously,

 8  we're not suggesting that at this time.

 9       But, you know, as to the government's primary

10  concern, which is the allegation and the seizure of a gun

11  in relation to the arrest here, one of the, you know,

12  first conditions and probably the first thing I talked

13  with Mr. Jallo about is the fact that he will not be

14  allowed to possess a gun, weapon, ammunition of any kind

15  while on bond.  He understands that.  His uncle

16  understands that.  And I think that really addresses the

17  Court's -- or the government's primary argument regarding

18  risk of danger.

19       I -- you know, while, obviously, I would prefer a

20  home detention release to a detention order, I think that

21  the Pretrial Services recommendation of standalone

22  location monitoring is sufficient here.  You know,

23  Mr. Jallo certainly can comply with any order the Court

24  imposes, but that would certainly give the Court and

25  Pretrial Services assurance of where he's spending his

 1   time.  You know, really I believe he's focused on school.

 2   He'll play video games at home.  He'll spend time with

 3   his family.  He'll go to treatment and he'll work with

 4   me.  That's what he'll be doing while released on this

 5   case.

 6          So I think that the Court can have every confidence

 7   that with the record before it that he is going to comply

 8   with this Court's orders.  You know, and I would share --

 9   although, obviously, he's being introduced to the Court

10   today, the Court does have the Pretrial Services report,

11   which includes the fact that he served in the military

12   where he did not have issues.  It includes the fact that

13   he has not had any other involvement with law enforcement

14   in his life.  It includes the fact that he is enrolled in

15   school and pursuing a positive career.  So it does

16   include, you know, facts that other meaningful

17   institutions in our community have recognized that

18   Mr. Jallo is and can be a very responsible member of the

19   community.  And I would ask the Court to consider those

20   facts as well.

21          Finally, as to the guidelines, when I -- you know,

22   I think that there is -- it seems even just from the

23   differences in the statements we heard today in court

24   versus those that are recited in the complaint, which I

25   recognize are secondhand so there's some room for error

 1    there, I don't think it's particularly clear the extent

 2    to which a gun was involved in this situation or not.

 3         As the government recognized that is the primary

 4    enhancement, that even when I look at the guideline here,

 5    which is I believe Section 2A6.2, that would be a

 6    two-level enhancement.  It's a base offense level 18.  He

 7    has no criminal history.

 8         In my experience, someone in that guideline range,

 9    I've gotten probation for clients with much higher

10    guidelines for that.  So I don't think that he has any,

11    you know, reason to -- certainly to flee on that account

12    or to otherwise act irrationally on that account.

13         To the contrary, I think the conditions recommended

14    by Pretrial Services are appropriate here and will more

15    than reasonably assure the Court that he will not present

16    a danger to himself or others.

17         And I'm happy to answer any questions the Court

18    has.

19         THE COURT:  I don't have any.  Thank you, Ms. Fish.

20         All right, sir, before I make a decision whether to

21    detain or release you today, you have a right to address

22    the Court but you're not required to say anything.

23         What's your choice, sir?

24         MS. FISH:  Your Honor, I think Mr. Jallo is a

25    little too emotional right now to speak, but I know he

1   appreciates the Court allowing him the opportunity, so...

2       THE COURT:  Does he need some time to collect

3   himself before he exercises his right to address the

4   Court or would he rather not address the Court?

5       MS. FISH:  Your Honor, if we could have just a

6   minute for him to collect himself?

7       THE COURT:  Would you like the Court to take a

8   recess or should we just recess in place?

9       MS. FISH:  If the Court could take a short recess,

10  we would appreciate it.

11      THE COURT:  Sure.  When the Defendant is prepared

12  to proceed, if you could just notify Ms. Miller?

13      MS. FISH:  Will do.  Thank you, Your Honor.

14      THE COURT:  The court is in recess.

15      THE COURTROOM DEPUTY:  All rise.  Court is in

16  recess.

17                      (Recess)

18      THE COURT:  -- be seated.

19      THE COURTROOM DEPUTY:  We are recalling the matter

20  of United States of America v. Jallo-Jamboria, MJ case

21  number -- or Case No. mj25-5447.

22      THE COURT:  All right, sir, as I previously

23  mentioned, you have a right to address the Court before I

24  make a decision but you're not required to say anything.

25      What is your choice, sir?

1          MR. JALLO-JAMBORIA:  I would like to speak, Your

2     Honor.

3          THE COURT:  Go ahead, sir.

4          MR. JALLO-JAMBORIA:  I just wanted to apologize --

5     I -- I'm sincere -- to the community, but I really just

6     wanted to reiterate to you and to the community and to

7     everyone else that's part of it, is this process for me

8     is to show why I'm not what it looks like.  I'm -- I'm

9     here to show you the best I could do.  I'm not looking to

10    mess anything up.  I'm not looking to right a different

11    wrong.  I'm just looking to try my best.  Thank you, Your

12    Honor.

13         THE COURT:  Is that it, sir?

14         MR. JALLO-JAMBORIA:  Yes, Your Honor.

15         THE COURT:  All right.

16         All right.  I do adopt all of the facts contained

17    in the documents that I previously identified.  For

18    purposes of this decision on the issue of any potential

19    inconsistences between the statement of Victim 2 and the

20    sworn affidavit, I rely upon the sworn affidavit at this

21    time supporting the criminal complaint.

22         So, sir, the United States Constitution gives you

23    many trial rights.  And one of them you may be very

24    familiar with, which is the presumption of innocence.  So

25    at trial you stand innocent of the charge that you have

1  been charged with here, the stalking charge at 18 U.S.C.

2  2261, until and if the government can prove your guilt

3  beyond a reasonable doubt to a jury of your peers.

4       However, solely for making the decision whether or

5  not to release or detain you today, I have to rely upon a

6  statute that's called the Bail Reform Act.  And under

7  that statute, I have to answer three critical questions.

8       First, whether or not you're a flight risk.

9       Second, whether or not you pose a danger to the

10  risk of the community or the safety of others.

11       And then, finally, if either one of those are the

12  case, then I need to decide whether or not there's a

13  condition or a combination of conditions that would

14  mitigate those risks.

15       And so to answer these questions, I must consider

16  several factors required by law under the Bail Reform

17  Act.  And one of those factors includes the seriousness

18  and circumstances surrounding the charged offense here,

19  much of the information contained in that criminal

20  complaint, that charging document.

21       And so when I consider the nature and circumstances

22  of this charge, I don't make a finding as to whether or

23  not you've actually committed this offense because,

24  again, you retain the presumption of innocence at trial.

25  However, today I do have to consider the charged offense

 1   and the circumstances surrounding the offense just solely

 2   for this detention or release decision as established by

 3   probable cause and solely on the issue of flight risk or

 4   danger to the community.

 5        I must also consider some additional factors that

 6   include the weight of the evidence as to that charge,

 7   although that is the least important factor.  And then I

 8   also need to consider your history and characteristics,

 9   much of which were addressed today.

10        And so ultimately in answering these three

11   questions and specifically in considering the nature and

12   circumstances of the offense, whatever decision I make

13   today it is not designed to punish you.  It's just

14   designed to make that detention or release decision.  And

15   in making this decision, the Bail Reform Act has

16   recognized that release should be the normal course and

17   detention prior to trial or without trial is the

18   carefully limited exception.

19        This is not a presumption case and that means that

20   the government must establish that you're a flight risk

21   either by a preponderance of the evidence or that you're

22   a danger to the community by a clear and convincing

23   evidentiary standard.

24        In making that assessment, I need to rely upon what

25   are called factors under the Bail Reform Act, those

1   factors I have just described to you:  nature and

2   circumstance of the events, weight of the evidence, and

3   history and characteristics.

4        And in making this decision, sir, I do want to

5   indicate to you that there are, in fact, factors that

6   support your release today, many of which Ms. Fish

7   persuasively argued today.  I don't have any reason to

8   doubt that you will make your court appearances.  You do

9   not appear to have a history of criminal convictions or

10  criminal record.  You do appear to have ample community

11  ties.  You have a stable residence.  And as I understand

12  it, you have been going to school and so it's the rough

13  equivalent of stable employment.

14       On the other side of the coin, there are factors

15  that weigh in favor of detention.  Those include the

16  weight of the evidence, although that's the least

17  important factor.  I also need to consider whether or not

18  you are or have been using drugs or perhaps whether or

19  not you are suffering from a mental health crisis that

20  may have, in fact, fueled parts of the alleged misconduct

21  and the nature and the circumstances of the events.

22       While those ordinarily may be factors for or

23  against detention, what makes this difficult is that I

24  don't really have any information about those actions,

25  other than what I will say in a moment, which leads me to

1    the most important critical aspect of this analysis,

2    which is the nature and the circumstances of this

3    offense, which allegedly involves a firearm.

4         And here to the extent that I must consider these,

5    I don't have any real explanation as to why those events

6    may have occurred on or about December 8, 2025.  I don't

7    have any information about the nature of the

8    relationships or if there were any relationships.  I

9    don't have any information about whether or not you may

10   or may not have been suffering from an acute mental

11   health crisis on December 8th, 2025.  I don't have any

12   information as to whether or not you may or may not have

13   been under the influence of drugs or alcohol.  I don't

14   know.  So to this Court, the nature and circumstances of

15   the offense are deeply concerning because I have no idea

16   why they may have occurred.  And these allegations are

17   serious.

18        Now there is an open question as to the length of

19   your potential confinement should you be convicted of

20   this, but it doesn't change the fact that these are very

21   serious allegations.

22        As you heard from Victim 2, they were serious to

23   Victim 2.  Victim 1, while Victim 1 acknowledges the

24   behavior, Victim 1 doesn't view it as seriously.  I think

25   we can assume that the community of Joint Base

1    Lewis-McChord, had they known that there may have been an

2    individual allegedly driving at erratic speeds and in

3    possession of a firearm with a chambered round, I suspect

4    the JBLM community would have been deeply concerned.

5          So ultimately here are my conclusions, sir:

6          I do not believe the government has met its burden

7    that you are a flight risk.

8          I do find, although it is a close call, that the

9    government has established by clear and convincing

10   evidence that you are danger to the community.

11         And so that leaves us with the final question, sir,

12   is whether or not there are conditions or a combination

13   of conditions that would address the Court's concern that

14   you're a danger to the community?

15         And Ms. Fish makes all the right arguments and

16   perhaps with even very strenuous conditions that danger

17   could be mitigated, but I'm left with one fundamental,

18   deeply troubling question.  I don't know why the alleged

19   events may have happened on December 8, 2025.  And

20   because of that, I don't know what may have changed

21   between December 8, 2025, and December 16, 2025.

22         And because I don't have that information, I'm

23   confronted with the reality that there's not a single

24   condition I can impose that would prevent you, if you

25   were determined to do so, to access a firearm, to access

1   JBLM, and to access either the two victims in this case

2   or other individuals at JBLM.  There are conditions that

3   would tell me that you were doing so, but they couldn't

4   prevent you in real time from actually engaging in that

5   behavior.

6        And so because of the alleged seriousness of that

7   misconduct and because I don't really have any other

8   answers as to why it may have occurred, I can't have

9   sufficient confidence that I can impose any conditions or

10  combination of conditions that would prevent something

11  like this from happening in the near term.  And so

12  because of that, sir, you're going to be detained.

13       Yes, Ms. Fish?

14       MS. FISH:  Your Honor, I do have some objections to

15  the Court's ruling.  Primarily, the Court, I believe, has

16  shifted the burden.  This is a presumption of release

17  case.  The Court rested its ruling on an absence of

18  information.  That absence has to be held against the

19  government and so should weigh in favor of release.

20       Additionally, the kind of concern that the Court

21  would like to know a motive for a crime to which

22  Mr. Jallo has pled not guilty is asking him to trade his

23  Fifth Amendment right to silence for his Fifth Amendment

24  right to freedom and that is not a fair position to put

25  anyone in.  So I would ask the Court to reconsider in

 1   light of his constitutional rights and understanding

 2   that and to apply the burdens of the Bail Reform Act

 3   correctly.

 4        In addition, I would note the Court could impose a

 5   condition the Court had imposed in a previous case I was

 6   involved with and I would be happy to work with Mr. Jallo

 7   and his uncle to achieve this, which would be that he go

 8   directly from release to Wellfound to do an intake for

 9   potential residential treatment.  I don't know that

10   that's necessary in this case, but it's certainly

11   something he would be happy to do.  And it would offer

12   the Court greater assurances than a more generalized

13   mental health condition.

14        I've spoken extensively with the staff at Wellfound

15   in preparation in other cases and they are open 24 hours.

16   They have evaluators available.  It is just up the hill,

17   Your Honor.  We could drive up there and he could do an

18   intake today.

19        So I do think there are conditions.  I don't think

20   that there's -- you know, if every case was held to the

21   standard of "you must explain to me why this happened,"

22   while we pled not guilty, no one would ever be released.

23        And here, I -- you know, I think there are very

24   significant differences to the -- to Mr. Jallo's life at

25   the time of arrest versus our release plan.  We are

1   proposing he release to live with his uncle, who is a

2   responsible adult in the community, who has been vetted

3   by Pretrial Services.  There would be no weapons in that

4   home nor would he have access to any.  There's a location

5   monitoring condition.  There's a mental health treatment

6   condition.  He was not in mental health treatment before.

7        So I would ask the Court to reconsider its ruling

8   in light of additional available conditions and his

9   constitutional rights and the presumptions of the Bail

10  Reform Act.

11       THE COURT:  Thank you, Ms. Fish.  I'm happy to

12  clarify my ruling.

13       The danger to the community determination is based

14  primar- -- exclusively upon the information contained

15  within the criminal complaint and the other uncontested

16  information before the Court.

17       I also want to clarify that, while I explained my

18  opinion to your client today, I didn't mean to imply by

19  speaking to your client that he owed this Court an

20  explanation at all.  Your client has no obligation to

21  present any evidence whatsoever.

22       But objectively speaking, I have to apply the

23  factors under 3142(g).  And in considering the nature and

24  the circumstances of the offense, these are deeply

25  alarming allegations.  I have no idea why they happened

1    and I have no idea what has changed between the day they

2    happened and the day that occurred today.  Defense has no

3    obligation to address that.  Candidly, the government

4    hasn't addressed it either, either in -- they haven't

5    presented any aggravating information.

6          So when I make a decision about conditions or

7    combination of conditions, I simply -- based upon the

8    unverified information about the relationships between

9    the individuals involved allegedly in this case as well

10   as any issues the Defendant may or may not have been

11   suffering, presumably because there is some chance that

12   someone may have been suffering from a mental health

13   episode and/or under the influence to allegedly engage in

14   these actions, but I leave open the possibility that

15   these allegations were the result of sober, rational

16   decisions, if they occurred.  I simply don't know, but I

17   also don't know -- there isn't anything to convince this

18   Court that if I impose conditions that whatever gave rise

19   to what allegedly occurred on December 8th aren't still

20   present such that lives will be in danger.

21         MS. FISH:  I understand the Court's concern, but I

22   still believe -- you know, the government booked my

23   client into jail.  The government did -- he underwent a

24   screening when he was booked into jail.  If he had been

25   under the influence, that certainly could have been

1    presented to the Court.  It was not.  I don't think that

2    that is a factor here.

3         As to the mental health concern, he's very happy to

4    seek treatment.  He's made that clear to the Court.  That

5    is the concern raised by the prosecutor and by Victim 1.

6    It is not -- I don't think it's a mystery.  I don't --

7    but I don't think that it is fair to put it on Mr. Jallo

8    to present information that -- and I understand the Court

9    is not asking him to speak right now, but the effect of

10   the order is to do that.

11        THE COURT:  So, Ms. Fish, you allude to mental

12   health treatment.  I can't even presume that you are

13   referring to a mental health dynamic that in any way

14   relates to the alleged misconduct.  You may be advocating

15   for mental health treatment to which he's entitled.  It

16   may be service-connected.  It may be entirely unrelated

17   to the alleged misconduct.  I don't know.

18        I'm not in any way assuming or inferring that even

19   the mental health treatment you're alluding to is a

20   comment on a potential mental issue.  What I'm suggesting

21   is, these actions -- these alleged -- this alleged

22   incident is so alarming that I would be even more

23   concerned if they were the result of rational action.

24        MS. FISH:  I guess then is the Court's ruling that

25   the complaint alone would have led to the detention

1    order, no matter what Mr. Jallo presented?

2          THE COURT:  Yes.

3          MS. FISH:  Understood.

4          THE COURT:  This Court's ruling -- as a part of the

5    Bail Reform Act process, the Court is provided with the

6    information from a number of sources.  Traditionally,

7    that information comes from the government and Probation

8    and the Defense has no obligation to provide any

9    information.

10         Today, the Defense has proffered some information.

11   But to the extent that I have commented on the lack of

12   information, it is in no way an indication that the

13   Defense has any obligation to produce information.  I am

14   simply stated -- stating that based upon the information

15   provided to the Court, even from the traditional sources,

16   I have no explanation as to why this alleged misconduct

17   may have occurred.

18         And this Court does fear that if I release the

19   Defendant, even with conditions, lives will be at stake.

20   And so based upon that concern, I am making the decision

21   to detain the Defendant.

22         Is there anything else to take up in this case at

23   this time?  Ms. Ellsworth?

24         MS. ELLSWORTH:  No, Your Honor.  Thank you.

25         THE COURT:  Ms. Fish?

1           MS. FISH:  No, Your Honor.

2           THE COURT:  All right, sir, and so consistent with

3    the Court's ruling, you are remanded to the custody of

4    the United States Marshal.

5           The Court is prepared to simply call the next case.

6    But if Counsel would prefer a recess, I can take a recess

7    as well.

8           MS. FISH:  If I could have a couple minutes to

9    speak with Mr. Jallo, I would appreciate it.

10          THE COURT:  Would you like the Court to take a

11    recess to do so?

12          MS. FISH:  Yes, please, Your Honor.

13          THE COURT:  Okay.  The court is in recess.

14          THE COURTROOM DEPUTY:  All rise.  Court is in a

15    recess.

16               (Conclusion of hearing)

17

18   /Kore Siegel, CET/May 1, 2025

19   AAERT Certified Electronic Transcriber

20   Buell | RJW

21   Court-Certified Transcription

22   1325 Fourth Avenue

23   Suite 1840

24   Seattle, Washington 98101

25   206.287.9066