The Honorable Tiffany M. Cartwright

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ALIM HAFFIZ JALLO-JAMBORIA,<br><br>Defendant. | NO. CR25-5354 TMC<br><br>GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO REVOKE THE DETENTION ORDER [Dkt. 15] |

## I. INTRODUCTION

On December 8, 2025, Alim Haffiz Jallo-Jamboria entered Joint Base Lewis McChord. Using a GPS tracker, he sought out his roommate (Victim 1) and his roommate's friend (Victim 2). Upon finding Victim 1's vehicle (in which Jallo-Jamboria had installed a tracking device), and at around 11:00pm, Jallo-Jamboria began kicking it and letting air out of the tires – actions he communicated to Victim 1 via text message. When Victim 2 went to check on Victim 1's vehicle, Jallo-Jamboria, armed with a firearm, confronted Victim 2 and followed Victim 2 into a JBLM barracks building. Early in the morning on December 10, on JBLM, Jallo-Jamboria confronted Victims 1

Opposition to Motion to Revoke the Detention Order
*United States v. Jallo-Jamboria* / CR25-5354 TMC — 1

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

and 2. Jallo-Jamboria again displayed a firearm, engaged in a high-speed chase, and hit Victim 1's car to prevent Victims 1 and 2 from reaching law enforcement.

On these facts, Magistrate Judge Leupold found the case eligible for a detention hearing. Then, balancing the information presented by the government, Pretrial Services, and Jallo-Jamboria's counsel, Magistrate Judge Leupold correctly found that Jallo-Jamboria presented a danger to the community, that proposed release conditions could not ameliorate that danger, and ordered detention. This Court should deny Jallo-Jamboria's motion to revoke that order.

## II. FACTUAL BACKGROUND

The United States incorporates many of the facts set forth in Jallo-Jamboria's motion but clarifies three specific facts.

First, counsel misstates the facts related to Jallo-Jamboria's transport to Seattle for his initial appearance on December 11, 2025. CID agents and Jallo-Jamboria arrived at approximately 11:22am; the cut-off time for arrival of individuals to appear on the new arrest calendar in Seattle is noon. By asserting that "the government brought [him] to that courthouse *so late in the day* … that Pretrial Services could not interview him" (emphasis added) –facts that otherwise have no bearing on the motion pending before the Court – counsel attempts to cast the government in a negative light from the outset.[1]

Second, Victim 1 is not Jallo-Jamboria's girlfriend.[2] Although Victim 1 and Jallo-Jamboria were in a dating relationship previously, Victim 1 told law enforcement that

---

[1] The undersigned asked the Pretrial Services Officer on duty December 11, 2025, whether there would have been time for an interview on December 11 and received a copy of email communications between the PTS Officer and the duty AFPD. It may well be that despite the government bringing Jallo-Jamboria to the courthouse before the cut-off time, the duty AFPD didn't have time to ask Jallo-Jamboria about whether to participate in an interview, and/or that the Marshals were unable to accommodate an interview upon Jallo-Jamboria's arrival. But that is not counsel's claim in the motion. Instead, counsel puts the blame on the government through the implication that the government's conduct prevented Pretrial Services from interviewing Jallo-Jamboria, which is untrue.

[2] In the First Supplemental Pretrial Services Report, Jallo-Jamboria stated that he and Victim 1 are "in a personal relationship." He did not say Victim 1 is his girlfriend.

Opposition to Motion to Revoke the Detention Order
*United States v. Jallo-Jamboria* / CR25-5354 TMC — 2

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

relationship ended about one year ago and that the two had been roommates since that time. Using that term as the correct characterization of the relationship between Jallo-Jamboria and Victim 1 provides the "ease of reference" counsel seeks.

Third, as the transcript of the detention hearing clarifies, Victim 2 believed Jallo-Jamboria had a gun on December 8, 2025. *See* Dkt. 18 at p. 17, lines 20-25 ("[I]t was already late at night. … I look up and there's like something pointed at my direction. *It looked like a firearm to me*, but, like, I don't know if he – put it back in like his pocket – because he was wearing a hoodie" (emphasis added)).

### III.  PROCEDURAL HISTORY

Law enforcement arrested Jallo-Jamboria on December 10, 2025, on probable cause to believe he had committed the crime of Stalking, in violation of 18 U.S.C. § 2261A(1)(A) and 7(3). Agents transported him to the Federal Detention Center on December 10; the following day, December 11, they transported him from the FDC for an initial appearance in Seattle and CID Special Agent John Ruffner swore to a Complaint. Dkt. 1. The government filed its motion for detention and indicated it was prepared to argue the issue that day. Dkts. 5, 7. The duty AFPD asked for additional time, and the detention hearing was reset to December 16, 2025, before Magistrate Judge Leupold. Dkt. 5.

On December 16, the parties appeared for the detention hearing. Dkt. 10. After hearing from the parties, and after considering the Pretrial Services report recommending release on conditions, the Court ordered Jallo-Jamboria detained. Dkt. 11.

On December 17, 2025, the Grand Jury indicted Jallo-Jamboria for Stalking. Dkt. 1 (case no. CR25-5354TMC). On December 19, Jallo-Jamboria filed his motion to revoke the detention order with the Court. Dkt. 15.

Opposition to Motion to Revoke the Detention Order  
*United States v. Jallo-Jamboria* / CR25-5354 TMC — 3

UNITED STATES ATTORNEY  
1201 PACIFIC AVE., SUITE 700  
TACOMA, WASHINGTON 98402  
(253) 428-3800

## IV. LAW AND ARGUMENT

### A. Standard for Appeal of Detention Order

An appeal of a magistrate judge's detention order is governed by 18 U.S.C. § 3145(b). Review is *de novo*. *See United States v. Koenig*, 912 F.2d 1190, 1191 (9th Cir. 1990). This Court need not give deference to the findings or the conclusion of the magistrate judge. *Id.* at 1191-92. But neither does this Court need to "start over in every case[] and proceed as if the magistrate's decision and findings did not exist." *Id.* at 1193. This Court can adopt or reject those findings, in whole or in part. *Id.* And, this Court can review additional evidence proffered by the parties. *Id.*

### B. The Case is Eligible for a Detention Order.

The Bail Reform Act provides that a detention hearing shall be held on the government's motion in a case that involves "a serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate [or attempt to do so] a prospective witness …" 18 U.S.C. § 3142(f)(2)(B).

Jallo-Jamboria's conduct, as described in the Complaint, shows the lengths he has already gone to in his attempt to obstruct justice and threaten or intimidate witnesses, placing him squarely within the Court's inherent detention authority. *United States v. Figueroa-Alvarez*, 681 F.Supp.3d 1131, 1135 n.2 (D. Id. 2023).[3] The judicial officer has the inherent authority to hold a detention hearing in such a case, because it can hold one on its own motion without any motion from the government. 18 U.S.C. §3142(f)(2)(B).

As Victims 1 and 2 were fleeing from Jallo-Jamboria and driving toward the JBLM Military Police Station on December 10, Jallo-Jamboria hit Victim 1's car so hard it spun 180 degrees. Dkt. 1, ¶ 13. Victim 1 believed this was an attempt to stop Victim 1 from reaching the police station. *Id*. Counsel is wrong to suggest that "nowhere" in the

---

[3] Counsel cites to this case and the Congressional Record quotation in footnote 2 but stops short of noting that Jallo-Jamboria's conduct falls squarely within the example set out, i.e., "a situation in which … the defendant has threatened … a witness." 681 F.Supp.3d at 1131 n.2.

Opposition to Motion to Revoke the Detention Order
*United States v. Jallo-Jamboria* / CR25-5354 TMC — 4

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

Complaint is there an allegation of Jallo-Jamboria's threats to obstruct justice. Dkt. 15 at p. 12, lines 24-25. Jallo-Jamboria has already shown the violent means he is willing to exercise to attempt to intimidate witnesses in this case. Dkt. 1, ¶ 13.

Jallo-Jamboria's actions on December 10, 2025, establish by a preponderance of the evidence that there is a serious risk he will (or will attempt to) obstruct justice or threaten/injure/intimidate a witness. Jallo-Jamboria's actions support Magistrate Judge Leupold's conclusion that the case was eligible for a detention hearing.

C.    The Detention Order Should Not Be Revoked

The government has the burden of proving Jallo-Jamboria's danger to any person or the community by clear and convincing evidence. *United States v. Gebro*, 948 F.2d 1118, 1120 (9th Cir. 1991). The government may present evidence by way of an evidentiary proffer sufficient to make the court aware of the defendant's role in the offense, the weight of the evidence against the defendant, and other relevant factors. *See, e.g. United States v. Salerno*, 481 U.S. 739, 743 (1987); *United States v. Winsor*, 785 F.2d 757 (9th Cir. 1986). The government did not and is not arguing that Jallo-Jamboria poses a risk of flight.[4]

In deciding whether there are appropriate conditions of release a court looks to the following factors: (1) the "nature and circumstances of the offense charged," (2) the "weight of the evidence against" the defendant, (3) the "history and characteristics" of the defendant, including his "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings," and (4) "the nature and seriousness of the

---

[4] Citations to statistics on Pretrial Services' successes in preventing failures to appear are thus unavailing. *See* Dkt. 15 at p. 16, lines 13-16. And the irony of counsel's citations to *United States v. Subil*, CR23-030TL in the context of demonstrating risk of flight, *see, e.g.,* Dkt. 15 at pp. 10, 11-12, is not lost on the government since Subil cut off his GPS monitor and has been in abscond status since September 7, 2024. *Subil*, CR23-030TL, Dkts. 105, 108.

Opposition to Motion to Revoke the Detention Order
*United States v. Jallo-Jamboria* / CR25-5354 TMC — 5

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g).

### 1. Magistrate Judge Leupold correctly found that application of the proffered facts to the above listed factors warrant detention.

First, the nature and circumstances of the offense involves danger to the community. On December 8, Jallo-Jamboria electronically surveilled Victim 1 onto JBLM and attempted to damage Victim 1's vehicle. Dkt. 1 at ¶¶ 7-8. Jallo-Jamboria pointed what Victim 2 believed to be a firearm at Victim 2. *Id*. at ¶ 9; *see also* Dkt. 18 at p. 17, lines 20-25.

On December 10, Jallo-Jamboria, armed with a firearm, brandished it to Victims 1 and 2 before engaging in a high-speed chase of them on JBLM. Dkt. 18 at p. 18, lines 8-15. After Jallo-Jamboria hit Victim 1 and Victim 2, military police eventually apprehended him and discovered a loaded firearm with a round in the chamber in Jallo-Jamboria's car. Dkt. 1 at ¶ 14. Officers also located ammunition, at least some of which appears to be Victim 1's property, in the trunk of Jallo-Jamboria's vehicle.

Stalking Victim 1 by putting a tracking device in the trunk of Victim 1's vehicle, attempting to damage Victim 1's vehicle, brandishing a firearm to Victim 2 on two occasions (and to Victim 1 on one occasion), engaging in a high-speed chase on JBLM, intentionally hitting Victim 1's vehicle, being found in possession of loaded firearm with a round chambered, and being found in possession of additional ammunition (at least some of which may not have belonged to him), all show that Jallo-Jamboria's offense conduct involves danger to the community. Therefore, the Court should find that the first factor weighs in favor of detention.

Second, the weight of the evidence is significant, as detailed in the Complaint, and as found by the grand jury in their return of an Indictment against Jallo-Jamboria. While this factor is the least important, the Court should find it favors detention.

Opposition to Motion to Revoke the Detention Order
*United States v. Jallo-Jamboria* / CR25-5354 TMC — 6

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

Third, Jallo-Jamboria's "history and characteristics" also warrant detention. The government acknowledged Jallo-Jamboria's lack of criminal history, his residence in the community, schooling, and a nearby family member. Dkt. 18 at pp. 24-25, lines 25-5. However, despite this seeming stability, Jallo-Jamboria's characteristics are such that this conduct occurred seemingly out of the blue. It took place over multiple days; Jallo-Jamboria did not cool down after December 8. He did not re-evaluate his choices. He upped the ante by returning to JBLM a second time, with a loaded firearm, and again confronted Victim 1 and Victim 2. His characteristics are such that he then engaged in a high-speed car chase and hit Victim 1's vehicle forcibly. The great unknown about Jallo-Jamboria's history and characteristics is his mental health and the degree to which it may have contributed to his offense conduct. Although he reports struggling with depression and anxiety, *see* First Supplemental Pretrial Services Report, his conduct on December 8 and 10, 2025, seems to suggest something more than depression and anxiety.

Fourth, Jallo-Jamboria's release presents a serious danger to any person and the community. The allegations in the Complaint demonstrate the steps he took on December 10 to prevent Victim 1 and Victim 2 from reaching the JBLM police station – his attempt at obstructing justice and threatening/intimidating witnesses to his conduct. He twice took a firearm onto JBLM in contravention of their requirement that visitors to the base register their firearms.

At the conclusion of the parties' arguments, Magistrate Judge Leupold began his analysis by noting the factors in favor of Jallo-Jamboria's release – the overwhelming likelihood he would appear for future hearings, the absence of criminal history, the presence of community ties, stable residence, and school attendance. Dkt. 18 at p. 36. However, Magistrate Judge Leupold also characterized the nature and circumstances of the offense as "deeply concerning." *Id*. He noted it was a "close call," but found the government had carried its burden of establishing the danger Jallo-Jamboria poses to the community. Dkt. 18 at p. 38.

Opposition to Motion to Revoke the Detention Order
*United States v. Jallo-Jamboria* / CR25-5354 TMC — 7

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1    **2.    Magistrate Judge Leupold properly considered and less restrictive**
2    **alternatives to detention.**

3    Magistrate Judge Leupold correctly found that detention is the least restrictive
4 means to assure the safety of the community. He fully assessed Pretrial Services'
5 recommended release conditions, which included active GPS location monitoring and a
6 mental health evaluation, but ultimately concluded they fell short. Dkt. 18 at p. 39. Any
7 sort of location monitoring, while it could alert Pretrial Services to Jallo-Jamboria's
8 movement, would not prevent him from re-engaging in the same conduct set out in the
9 Complaint. *Id*. In considering the "deeply alarming" nature of the allegations in the
10 Complaint, Magistrate Judge Leupold noted that he did not know whether Jallo-Jamboria
11 was suffering from a mental health episode, was under the influence, or acted on "sober,
12 rational decisions" which would be even more alarming. Dkt. 18 at pp. 39-41.

13    **3.    Additional facts support Magistrate Judge Leupold's detention order.**

14    In this Court's de novo review, it can consider the facts in the record and
15 additional facts proffered by the parties. *Koenig*, 912 F.2d at 1193. The undersigned
16 provided counsel with initial discovery materials on December 22, 2025, and proffers the
17 following additional facts to the Court for its consideration.

18    a.    In a recorded interview with JBLM law enforcement on December
19 10, 2025, Victim 1 confirmed the relationship between Victim 1 and Jallo-Jamboria had
20 ended and that they were now just roommates. Victim 1 stated concern that Jallo-
21 Jamboria might have used his gun on Victim 2. Victim 1 expressed a belief that Jallo-
22 Jamboria might have an "if I can't have you then no one else can" thinking. Referring to
23 the events of December 10, Victim 1 also stated, "[Jallo-Jamboria] could have shot
24 [Victim 2], me, I didn't know his intentions but he did have a gun."

25    b.    Victim 1 described the car chase as Jallo-Jamboria trying to hit
26 Victim 1's car with his "the whole time." Victim 1 did not understand how things got to
27 this point, describing the situation as "crazy shit."

Opposition to Motion to Revoke the Detention Order
*United States v. Jallo-Jamboria* / CR25-5354 TMC — 8

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

        c.      Victim 1 noted that Jallo-Jamboria started playing Grand Theft Auto Roleplay in 2024 and was "on the game 24/7." Victim 1 described the game as "bad," with players taking it very seriously. Victim 1 described Jallo-Jamboria as "addicted" to the game.

        d.      In a second recording on December 10, Victim 1 read out text messages Jallo-Jamboria had sent to Victim 1 overnight. Some of those messages read, "I'm putting a bullet in my head in front of [you, I don't care] … "[You] need to see how fucked I am."[5]

        e.      Victim 1 told law enforcement that Jallo-Jamboria self-harms.

        f.      In a recorded interview on December 10, Victim 2 had never met Jallo-Jamboria before the night of December 8. Victim 2 stated that when he walked outside the barracks to check on Victim 1's car, he saw Jallo-Jamboria pull a gun out of his waistband and hold it in the "ready" position before Jallo-Jamboria tucked it back in.

        g.      After Jallo-Jamboria flashed the gun in his waistband to Victim 2 and Victim 1 on December 10, Jallo-Jamboria forward-kicked Victim 1's driver's door about five times. Victim 2 told Victim 1 to drive off because "this isn't worth our lives." Victim 2 described the car chase as them driving fast, "cutting off cars illegally," with Jallo-Jamboria trying to sideswipe them the entire time.

The government believes the Court would also benefit from additional facts, including a mental health evaluation and, if appropriate, treatment recommendations *before* deciding whether to affirm the detention order or release Jallo-Jamboria.

---

[5] Agents obtained a warrant to search Jallo-Jamboria's phone on Monday, December 22, 2025. Although agents could not complete the extraction before December 24 and before this response was due during the three-day Christmas holiday, they did find these text messages on Jallo-Jamboria's phone along with messages Jallo-Jamboria sent to Victim 1 before and after the confrontation with Victim 2 on December 8, and messages Jallo-Jamboria sent to Victim 2. Agents also found evidence of Jallo-Jamboria's use of the GPS tracking device that had been in Victim 1's car. The undersigned hopes to have additional information to share with counsel and the Court before the January 8, 2026, hearing.

Opposition to Motion to Revoke the Detention Order
*United States v. Jallo-Jamboria* / CR25-5354 TMC — 9

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

And, because Victim 1 and Jallo-Jamboria were in a previous relationship, the Court (and any mental health evaluator) should also consider the allegations in the Complaint through the lens of domestic violence. It appears Jallo-Jamboria may have many of the indicators on the Washington State Department of Social & Health Services "Risk, Needs, and Responsivity for Assessments and Treatment Planning" checklist. Exhibit 1 Among those indicators are a previous use or threat with weapons, signs of possessiveness/monitoring/stalking, threats of self-harm, symptoms of depression and/or anxiety, and social isolation. *Id*.

## V. CONCLUSION

Jallo-Jamboria's conduct on December 8 and 10, 2025, demonstrates the lengths to which he has already gone in an attempt to obstruct justice, and the danger he poses to "any person," including himself, the victims of his conduct, and the community at large. As such, and for all the above reasons, Magistrate Judge Leupold's Order is supported by the facts and applicable law. The United States respectfully requests that this Court deny Jallo-Jamboria's motion.

Dated this 26th day of December 2025.

Respectfully submitted,

CHARLES NEIL FLOYD
United States Attorney

 s/ *Marci L. Ellsworth*
MARCI L. ELLSWORTH
Assistant United States Attorney
1201 Pacific Avenue, Suite 700
Tacoma, Washington 98402
marci.ellsworth@usdoj.gov
(253) 428-3819

I certify that this memorandum contains 3,362 words, in compliance with Local Criminal Rules.

Opposition to Motion to Revoke the Detention Order
*United States v. Jallo-Jamboria* / CR25-5354 TMC — 10

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800